UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**RANDY RHINEHART**                                                                    **PLAINTIFF**

V.                          NO. 3:20CV00154-JTR

**COMMISSIONER of**
**SOCIAL SECURITY ADMINISTRATION**                              **DEFENDANT**

### ORDER

**I.    Introduction:**

On February 27, 2018, Plaintiff, Randy Rhinehart ("Rhinehart"), applied for supplemental security income benefits, alleging disability beginning on April 10, 2003. (Tr. at 13).

On July 18, 2019, after conducting a hearing, the Administrative Law Judge ("ALJ") denied Rhinehart's application for benefits. (Tr. at 23-24). The Appeals Council denied his request for review (Tr. at 1), making the ALJ's denial of Rhinehart's application for benefits the final decision of the Commissioner.

For the reasons stated below, the Court[1] reverses the ALJ's decision and remands for further review.

**II.   The Commissioner's Decision:**

The ALJ found that Rhinehart had not engaged in substantial gainful activity

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

since the application date of February 27, 2018.[2] (Tr. at 15). At Step Two of his analysis, the ALJ found that Rhinehart had the following severe impairments: depression, intellectual disorder, anxiety, back pain, and joint pain. *Id*.

After finding that Rhinehart's impairments did not meet or equal a listed impairment (Tr. at 15), the ALJ determined that Rhinehart had the ability to perform work at the light exertional level, except that: (1) he can only occasionally stoop, kneel, crouch, crawl, climb, and balance; (2) he retains the mental ability to understand, remember, and carry out simple job instructions and make decisions and judgments in simple work-related situations; (3) he is able to respond appropriately with co-workers and supervisors but should avoid interaction with the public; and (4) he has the ability to respond appropriately to minor changes in the usual work routine. (Tr. at 18).

The ALJ determined that Rhinehart had no past relevant work. (Tr. at 22). Relying upon Vocational Expert ("VE") testimony, the ALJ found that, based on Rhinehart's age, education, work experience and residual functional capacity ("RFC"), jobs existed in significant numbers in the national economy that he could perform, including positions as cleaner and hand packager. (Tr. at 23). Thus, the ALJ

---

[2] For supplemental security income benefits, the beginning of the relevant time-period for determination of eligibility for benefits is the date that the application was filed. (Tr. at 13-23).

concluded that Rhinehart was not disabled. *Id.*

### III. Discussion:

    A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

The United States Supreme Court recently held that "whatever the meaning of 'substantial' is in other contexts, the threshold for such evidentiary sufficiency [in Social Security Disability cases] is not high. Substantial evidence…is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d. at 477.

B.  Rhinehart's Arguments on Appeal

Rhinehart contends that substantial evidence does not support the ALJ's decision to deny benefits. He argues that the ALJ should have found that he met Listing 12.05B for Intellectual Disorder (Adult Listing of Impairments) and that the ALJ improperly analyzed the opinions of Dr. Kenneth B. Jones, Ph.D., who evaluated Rhinehart on three occasions. The Court concludes that the ALJ did not properly consider and evaluate Dr. Jones's medical opinions.

Rhinehart, who was 26 years old on the date he filed his application, suffered from mild mental retardation, scoring in the low range for intellectual testing from the time he was eleven years old. (Tr. at 225-229).

Dr. Jones performed consultative examinations on Rhinehart in 2007, 2013, and 2016,[3] and he issued detailed opinions based on his findings. (Tr. at 233-245). The ALJ found the opinions to be unpersuasive because they were not "a function-

---

[3] The ALJ incorrectly observed that the final examination by Dr. Jones was in 2018. (Tr. at 21).

by-function assessment and therefore not helpful in determining the claimant's residual functional capacity."[4] (Tr. at 21). The ALJ repeated that phrase each time he dismissed the opinions.

In the final paragraph of Dr. Jones' 2007 report, which is titled "Evaluation of Adaptive Functioning," he wrote that Rhinehart would have academic and social difficulties caused by his low intellectual functioning and tendency toward anger. (Tr. at 235). Dr. Jones determined that Rhinehart could be easily distracted when attempting to complete tasks, and he would struggle in completing work like tasks in an acceptable timeframe. *Id*. Dr. Jones also noted that Rhinehart would be unable to efficiently manage money. *Id*. These are *functional assessments*, and the narrative explains Rhinehart's limitations *in functional terms*.

In the 2013 report, Dr. Jones laid out very precise functional assessments under paragraph 7, titled "Effects of Identified Mental Impairments on Adaptive Functioning." (Tr. at 239). Dr. Jones elaborated on Rhinehart's capacity to: (1) Communicate and interact in a socially adequate manner; (2) Cope with typical

---

[4] On January 28, 2017, the Administration promulgated new regulations governing how ALJs assess medical opinion evidence. The new rules focus on whether an opinion is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant; (4) provider specialization; and (5) any other important factors. See 20 C.F.R. § 404, 1520c(a)-(c)(2017). An opinion is persuasive if it is sufficiently relevant to and consistent with the medical evidence as a whole. *See Phillips v. Saul*, No 1:19-CV-00034-BD, at *4 (E.D. Ark. June 24, 2020). An ALJ must give good reasons for his findings about an opinion's persuasiveness. *Id*.

mental-cognitive demands of basic work-like tasks; (3) Attend and sustain concentration on basic tasks; (4) Sustain persistence in completing tasks; and (5) Complete work-like tasks within an acceptable timeframe.[5] (Tr. at 239-240). Again, this represents a very specific function-by-function analysis, much like the rubric used by the Administration's own psychiatric experts at the initial and reconsideration levels. (Tr. at 74-75). The ALJ erred in stating that Dr. Jones's second opinion lacked a function-by-function assessment.

In 2016, Dr. Jones filled out the same type of function-by-function report, listing the same functional capacity areas as set forth in the foregoing paragraph. (Tr. at 245). Dr. Jones wrote that Rhinehart had problems reading social cues, had poor social discretion, and would have problems working in a timely manner. *Id*. Notably, in all three of Dr. Jones's opinions, which were based on in-person evaluations, constant and ongoing supervision or monitoring was described as a necessity for Rhinehart to be able to perform even basic tasks. (Tr. at 233-246). The 2013 report stated that Rhinehart will require ongoing supervision and monitoring in a work setting and will not be able to work and stay on task alone. (Tr. at 240). At that time, Dr. Jones indicated that Rhinehart would need assisted living services throughout

---

[5] Dr. Jones found Rhinehart's capacity in these areas to be limited, noting childlike social functioning and communication skills, and an inability to stay on task. *Id.*

his life. (Tr. at 239). Dr. Jones explained, in the 2016 report, that Rhinehart would not be able to track with instructions in a work situation, unless the job offers ongoing supervision and monitoring. (Tr. at 244). Dr. Jones noted that Rhinehart had worked for one day during the relevant time-period, but had been fired for being unable to understand the job. (Tr. at 242).

The need for constant supervision was a theme, echoed by L.M.S.W. Craig Wright, Rhinehart's regular therapist. Mr. Wright wrote, in June 2018, that Rhinehart would have a marked limitation in sustaining an ordinary work routine without special supervision. (Tr. at 287-291). Mr. Wright filled out a function-by-function survey of Rhinehart's capacity for work tasks, and concluded that Rhinehart would have moderate to extreme limitations in those areas.[6] *Id*. This list looked much like Dr. Jones's adaptive functioning summaries. While Dr. Jones's opinions predated the relevant time-period, they were echoed by Mr. Wright, and there was no evidence that Rhinehart's mental capacity improved after Dr. Jones's evaluations. For a doctor to properly evaluate a claimant's intellectual impairment, he may rely

---

[6] The ALJ gave Mr. Wright's statement "little weight," which is the language used for evaluating medical opinions under the old regulations; it is not the right standard for this case. (Tr. at 22). As of March 2017, medical opinions must be evaluated based on persuasiveness, with ALJ's required to specifically use the word "persuasive" in their written analysis. *See* n.4, *supra*. That being said, the Court notes that Mr. Wright's functional assessment was very similar to the three opinions from Dr. Jones, but the ALJ still discounted all four function-by-function opinions.

on historical medical evidence (intellectual impairment may not improve over time). *See Hall v. Florida*, 572 U.S. 701, 714 (2014). Variations in levels of functioning over time must be considered. *See Morgan v. Saul*, 2019 U.S. Dist. LEXIS 193132 at *8 (E.D. Ark. Nov. 5, 2019).

The ALJ clearly erred when he discounted Dr. Jones's opinions for the reason that they were not function-by-function assessments. (Tr. at 21). Because the opinions were consistent with treatment records, intellectual testing results, and Rhinehart's own testimony, they should not have been discounted (or at the least, better reasons should have been given, because they clearly **were** function-by-function assessments).

Moreover, the fact that multiple providers opined that Rhinehart would need near constant supervision appears to have been overlooked when the ALJ formulated the RFC. The RFC did not include the need for direct, concrete, or ongoing supervision. (Tr. at 18). An RFC must include all credible limitations. *See Burlison v. Colvin*, 2013 U.S. Dist. LEXIS *10 (W.D. Ark. Aug. 27, 2013)(RFC must include all limitations established by the credible medical and testimonial evidence); *see also Hartman v. Comm'r of the SSA*, 291 Fed. Appx. 818, 819 (9th Cir. 2008)(reversal required where RFC did not include need for direct supervision when the record supported such a requirement).

## IV. <u>**Conclusion:**</u>

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477). The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing. The Court finds that the ALJ's decision is not supported by substantial evidence, because the ALJ did not give proper consideration to the opinions of Dr. Jones.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is REVERSED, and the case is REMANDED for further review, including a more fulsome evaluation of medical opinions and consideration of Rhinehart's need for supervision in the RFC.

DATED this 22nd day of April, 2021.

_____
UNITED STATES MAGISTRATE JUDGE